IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,     )
                               )
          Plaintiff,          )
                               )
     vs.                        )     Cr. No. 15-3679 JCH
                               )
**LEON HERRERA**,              )
                               )
          Defendant.     )

## THE UNITED STATES' SENTENCING MEMORANDUM

The United States submits this sentencing memorandum pursuant to Rule 32 of the Federal Rules of Criminal Procedure, and respectfully recommends that the Court sentence the defendant, Leon Herrera (hereinafter, "Defendant"), to a term of imprisonment of 6 months followed by a one-year term of supervised release and a special penalty assessment of $100.00, for the reasons set forth below.

I.     RELEVANT FACTS AND PROCEDURAL HISTORY

On October 15, 2015, Defendant entered a guilty plea to an information, Doc. 1, charging him with one count of false impersonation of a federal officer or employee, in violation of 18 U.S.C. § 912.[1]  In a written plea agreement, Doc. 4, Defendant admitted to the following facts:

---

1 The statutory maximum penalties for this offense are imprisonment for three years followed by one year of supervised release, a fine of $250,000, and a $100 special penalty assessment.  18 U.S.C. §§ 912, 3559, 3571, 3583.  A defendant convicted of this offense is also eligible for a sentence of from one to five years of probation in lieu of imprisonment.  18 U.S.C. § 3561.  The conditions of probation must include a fine, restitution or community service, absent extraordinary circumstances.  18 U.S.C. § 3563.

a.      On or about December 15, 2014, I received a telephone call from my friend, Vidal Sandoval (hereinafter, "Sandoval").[2]      I was present in the District of New Mexico when I received this call.  At the time of this call, I knew that Sandoval was employed as a deputy sheriff in Colfax County, New Mexico. I also knew that I was not employed by the Drug Enforcement Administration ("DEA"), which is a department or agency of the United States, or any other federal, state or local law enforcement agency.

b.      During my telephone conversation with Sandoval, he told me, in sum and substance, that he was conducting a traffic stop of motorists who he believed were drug traffickers.   Sandoval further told me, in sum and substance, that he had found approximately $8000 in United States currency inside of the motorists' automobile.

c.      At one point in the conversation, Sandoval asked me, in sum and substance, to have a phone conversation with one of the motorists and to tell the motorist that I was a special agent from the DEA and that I intended to seize the money found in the motorists' automobile as proceeds of criminal activity.

d.      I then had a phone conversation with one of the motorists in which I misidentified myself as a representative of DEA and falsely stated to the motorist, in sum and substance, that I was seizing the money found in the automobile for legitimate law enforcement purposes.

e.      During my phone conversation with Sandoval, he also told me, in sum and substance, that he intended to keep that money that he found in the automobile for his own personal use.  Sandoval also offered to give me $1000 for assisting him in obtaining the money from the motorists.  At that time, I knew that my false statements and misrepresentations to the motorist served the purpose of assisting Sandoval in stealing the money found in the vehicle. I now know that the motorists were actually undercover law enforcement investigators and that Sandoval stole approximately $7500 in cash from them that actually belonged to the Federal Bureau of Investigation.

f.      I freely admit that my conduct violated 18 U.S.C. § 912 in that I falsely assumed and pretended to be an officer and employee acting under the authority of the United States, I knew that such assumption and pretension was false, and that while acting in such assumed and pretended character, I assisted Sandoval in obtaining money.

On December 16, 2015, the United States Probation Office disclosed a Presentence

Investigation Report ("PSR") in this matter.   The PSR indicated that Defendant's total offense

---

[2] Sandoval is scheduled to proceed to trial on April 11, 2016, in Cr. No. 15-787 JCH.

level under the advisory sentencing guidelines is 8, his criminal history category is I, and his range of imprisonment is 0 to 6 months.  PSR, ¶68.  A sentence of imprisonment is not required under the guidelines because Defendant's imprisonment range is in "Zone A" of the sentencing table and the applicable offense conduct guideline for his offense, i.e., USSG § 2J1.4, does not call for imprisonment.  PSR, ¶68.[3]  Rather, Defendant could be sentenced to a one to five year term of probation in lieu of imprisonment.  PSR, ¶73.  The PSR further noted that Defendant's guideline range for a term of supervised release is one year and his fine range is $1,000 to $10,000.  PSR, ¶78.  The PSR also indicated that Defendant lacks the financial resources to pay a fine.   PSR, ¶66.  The PSR indicated that although restitution is mandatory in this case, the Federal Bureau of Investigation ("FBI") is only requesting restitution from Sandoval, who is charged separately.  PSR, ¶80.  Finally, the PSR found that based on applicable sentencing factors, "a sentence within the advisory guideline range in accordance with Zone A may be warranted in this case."  PSR, ¶86.

II.    APPLICABLE LAW

The Court must impose a sentence within statutory parameters that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).   In fixing a sentence, the Court must consider such factors as the nature and circumstances of the offense and the history and characteristics of the defendant.   18 U.S.C. § 3553(a)(1).  The Court should also take into account the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter other criminal conduct and protect the public from further crimes by the defendant.  18

3 On January 21, 2016, the Probation Office issued a memorandum containing letters of support from Defendant's son, daughter, wife, and three educators.

U.S.C. § 3553(a)(2).   The Court must also consider the advisory Guidelines promulgated by the United States Sentencing Commission as they apply to the defendant in the particular case.   *See* 18 U.S.C. § 3553(b)(1).   Indeed, correctly calculating the Guidelines should be the starting point when determining an appropriate sentence.   *United States v. Joe*, 696 F.3d 1066, 1073 (10th Cir. 2012); *United States v. Kieffer*, 681 F.3d 1143, 1164 (10th Cir. 2012).

III.   ARGUMENT

The United States recommends that the Court sentence Defendant to a term of imprisonment of six months followed by a one-year term of supervised release and a special penalty assessment of $100.00.   These penalties are sufficient but not greater than necessary to punish Defendant for the crime he committed, consistent with the sentencing guidelines, and otherwise fair and appropriate under the circumstances.

Defendant has entered a guilty plea to the serious offense of impersonating a federal officer.   As Defendant admitted in his plea agreement, he posed as a DEA agent to assist Sandoval in stealing $8000 from motorists who Sandoval believed were drug traffickers. Defendant was indispensable in the theft because of his ability to speak Spanish.     After Sandoval stopped the motorists' vehicle, Sandoval called Defendant and told him that one of the motorists was "pure cartel."[4]   Sandoval explained to Defendant, "I can't understand what he's telling me."   Sandoval then told Defendant, "But if you can talk to the guy, kind of get the information, kind of see what he says, threaten him that he's going to go to jail for . . . money laundering or something."   Defendant fulfilled Sandoval's request by telling one of the

---

[4] The quotations in this paragraph are from an interview of Defendant conducted by the FBI on March 13, 2015.  During the interview, investigators read Defendant transcripts of Sandoval's conversations during the traffic stop of the motorists where Defendant posed as a DEA agent.  Defendant received a recording of this interview on July 6, 2015.

motorists that he was a DEA agent and that he planned to seize the money in the motorists' vehicle as criminal proceeds.

Defendant's crime is especially reprehensible because he committed it as a former law enforcement officer. Defendant had previously worked for the Las Vegas Police Department, the San Miguel County Sheriff's Department, the Mora County Sheriff's Department, and the Springer Police Department. Defendant certainly knew from his prior employment that corruption undermines the credibility of the law enforcement profession. The public simply cannot trust a criminal justice system administered by those who place their personal gain above their sworn duty to uphold the laws. Nevertheless, Sandoval's promise of a meager $1000 pay day was enough to entice Defendant into betraying his former comrades in blue and the public at large.

Imposing the sentence requested by the United States would promote respect for the law, provide just punishment, deter other criminal conduct, and protect the public from further crimes by Defendant. *See* 18 U.S.C. § 3553(a)(2). Importantly, such a sentence would send a clear message to would-be offenders that engaging or assisting in police corruption will lead to prison. Non-incarcerative sentences are not enough to make those who contemplate this kind of corrupt activity think twice or to assure the public that those who commit such corrupt acts receive serious punishment. Therefore, the Court should sentence Defendant to a six-month term of imprisonment, which is within the guideline range set forth in the PSR, followed a one-year term of supervised release following Defendant's incarceration, and impose a $100 special

penalty assessment.[5]

IV.   CONCLUSION

The United States respectfully requests that the Court sentence Defendant to a term of imprisonment of six months followed by a one-year term of supervised release, and a $100 special penalty assessment.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*Electronically filed 02/01/2016*

SEAN J. SULLIVAN
Assistant United States Attorney
Post Office Box 607
Albuquerque, NM 87103
(505) 346-7274

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of February, 2016, I filed the foregoing pleading electronically through the CM/ECF system, which is designed to cause counsel of record for Defendant to be served by electronic means.

*Electronically filed 02/01/2016*

SEAN J. SULLIVAN
Assistant U.S. Attorney

---

5 The PSR mentions the poor health of Defendant's wife as a possible basis for leniency. PSR, ¶85.  A defendant should generally not receive a reduction in his sentence based on family ties and responsibilities unless the circumstances are truly exceptional.  *See United States v. McClatchey*, 316 F.3d 1122, 1132  (10th Cir. 2003) (quoting *United States v. Sweeting*, 213 F.3d 95, 102 (3d Cir. 2000).